UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
MAY 20 2011
David J. Bradley, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | CRIMINAL NO. H-11-302 (1) |
| § | |
| RICHARD WESLEY LANSDALE, JR. § | |
| Defendant. § | |

## PLEA AGREEMENT

The United States of America, by and through Jose' Angel Moreno, United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, and the defendant, Richard Wesley Lansdale, Jr., and the Defendant's counsel, pursuant to Rule **11(c)(1)(C)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Parties' Agreement

1. The defendant agrees to plead guilty to Count Twenty Three (23) of the Criminal Indictment. Count Twenty Three charges defendant with Bank Fraud, in violation of Title 18, United States Code, Section 1344. The defendant, by entering this plea, agrees that he is waiving any right to have the facts that the

1

law make essential to the punishment either charged in the indictment, or proved to the jury beyond a reasonable doubt.

Additionally, the Parties have agreed that a sentencing range of up to 108 months imprisonment is the appropriate disposition of the case, as contemplated under Rule 11(c)(1)(C). If the Court accepts this agreement, the defendant is aware that a sentence up to 108 months confinement will be imposed. If the Court does not accept this agreement, the defendant can withdraw his guilty plea.

Defendant will also agrees to forfeit whatever interest defendant has in assets related to this case.

## Punishment Range

2.  The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1344, is imprisonment of not more than 30 years and a fine of not more than $1,000,000 or twice the gross gain or twice the gross loss. Additionally, the defendant may receive a term of supervised release after imprisonment of five (5) years. Title 18, U.S.C. §§ 3559(a)(2) and 3583(b)(1). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then defendant may be imprisoned for the entire term of supervised release, *not to exceed 3 years,* without credit for time already served on the term of supervised

release prior to such violation. Title 18, U.S.C. §§ 3559(a)(2) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Restitution, Forfeiture and Fines

4. This plea agreement is being entered into by the United States based on Defendant's express representation that Defendant will make a complete disclosure of all assets over which Defendant exercises control, direct or indirect, or in which Defendant has any financial interest.

Defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or, if no deadline is set, no later than sentencing. Defendant agrees to authorize the release of all financial information requested by the United States.

Defendant agrees to discuss or answer any questions by the United States relating to the Defendant's complete financial disclosure.

Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks that have custody of Defendant's assets to deliver all funds and records of such assets to the United States.

Defendant understands that forfeiture, restitution and fines are separate aspects of sentencing and are separate obligations.

## Waiver of Appeal

5. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined **on any grounds set forth in Title 18 U.S.C. § 3742.**

Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after

the conviction or sentence has become final. The defendant waives the right to contest his conviction or sentence by means of any post-conviction proceeding, **including but not limited to Title 28, U.S.C. §§ 1651, 2241 and 2255.**

If the defendant instructs his attorney to file a notice of appeal of his sentence or of his conviction, or if the he instructs his attorney to file any other post-conviction proceeding attacking his conviction or sentence, the defendant understands that the United States will seek specific performance of defendant's waivers in this plea agreement of defendant's right to appeal his sentence or conviction and of his right to file any post-conviction proceedings attacking his conviction or sentence.

6.  In agreeing to these waivers, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may receive from his counsel, from the United States, or from U.S. Probation Office is a prediction, not a promise, **did not induce his guilty plea**, and is not binding on the United States, the U.S. Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive, other than it has agreed that a sentencing range of up to 24 months is the appropriate disposition of the case. Defendant further understands

and agrees that the <u>United States Sentencing Guidelines</u> are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, the defendant understands that, although the Court must consult the <u>United States Sentencing Guidelines</u>, the Court is not bound to follow the Sentencing Guidelines nor to sentence the defendant within the calculated guideline range.

7. The defendant understands and agrees that each and all waivers contained in this plea agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8. The United States agrees to each of the following:

(a) If defendant pleads guilty to Count Twenty Three (23) of the Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Indictment at the time of sentencing;

(C) A sentencing range of up to 108 months is the appropriate disposition of the case pursuant to Rule 11(c)(1)(C) of the Federal Rules of Federal Procedure.

## United States' Non-Waiver of Appeal

9. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file

        and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

  (b)  to set forth or dispute sentencing factors or facts material to sentencing;

  (c)  to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office;

  (d)  to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a); ***and,***

  (e)  To appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

10. The defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as provisions of Title 18, U.S.C., Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including 108 months confinement, the sentencing range agreed upon as the appropriate disposition, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted applicable U.S. Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the U.S. Sentencing Guidelines do not bind the Court and the sentence imposed is within the discretion

of the sentencing judge. If the Court should impose any sentence up to 108 months confinement, the sentencing range agreed as appropriate disposition, defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all his obligations under this plea agreement.

### Rights at Trial

11. Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   (a) If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

   (b) At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

   (c) At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

12. Defendant is pleading guilty because he <u>is</u> guilty of the charges contained in Count Twenty Three of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the defendant's guilt:

1). From May 1, 2005, until April 1, 2008, Richard Wesley "Wes" Lansdale Jr., was the owner of an automobile dealership by the name of Northwest Suzuki located in Houston, Texas. Lansdale closed this dealership and on April 1, 2008, he opened another dealership called Northwest Pre-Owned which was also located in Houston, Texas.

2). In January/February 2005, Lansdale hired Dominic Dominguez as the Finance and Insurance manager at Northwest Suzuki and Norwest Pre-Owned. In 2006 to 2007, Lansdale used Edgar Barragan (and his brother Alejandro Barragan) to verify false employment for customers who wanted to buy an automobile but for various reasons they were not credit worthy and could not qualify to obtain loans. Lansdale and Dominguez would speak with the Barragans to get them to use their phone bank to provide false employment information about customers to financial institutions to obtain loans. Lansdale and Dominguez knew that the Barragans

9

used approximately 20 to 25 different business names to falsely mislead lending institutions about customers true employment status to obtain loans. Lansdale paid the Barragans approximately $175.00 per verification. Lansdale and Dominguez would call the Barragans directly about providing false employment verifications to lenders.

3). The procedure at Northwest Suzuki was to have a customer complete a five line application which did not include the employment information. The car salesmen (hired by Lansdale) would take the application to Lansdale who would obtain the false employment information to qualify a customer for a loan. Lansdale also hired Chad Carlson to develop false information in W2 forms, false check stubs, and other false or altered forms to support the false employment and income information to qualify a customer for a loan. Additionally, Lansdale instructed the salesmen to then meet with the customers and "coach" them on what to say to the lending institution to get the loan approved. Lansdale, Dominguez, and others directed by Lansdale would put the contract application information together and electronically transmit it to the lending institution knowing that the documents contained false employment and false income information.

4). Lansdale also used cell phones obtained by Lansdale and were located at the automobile dealership to verify employment for customers with lending

institutions. On certain occasions, Lansdale and the salesmen would pose as the customers seeking loans and they would speak with the potential lenders and provide false employment and income information for the real customer. Lansdale used alias names to avoid litigation. He used alias names "James Richardson", and "Brett Sturrock."

5). Further, Lansdale used the names of existing businesses to falsely verify employment for customers to obtain automobile loans. Some of the names included Cymbal Fusin, Pashia Insurance Group, and Direct Insurance. Lansdale recruited Jason Flanagan to use the name of his insurance company, Direct Insurance, to provide false employment information. Flanagan also recruited Eric Paulson to use his company's name Cymbal Fusin to falsely verify employment for customers of the automobile dealerships. Flanagan wrote insurance policies for the vehicles that were purchased through fraudulent means as described above. Flanagan knew that the information he used to prepare the insurance binders contained false information about the insured customers.

6). James Pashia was also recruited by Lansdale and Dominguez to use the name of his insurance company, Pashia Insurance Group, to provide false employment information. Pashia wrote insurance policies for the vehicles that were purchased through fraudulent means as described above. Pashia also knew

11

that the information he used to prepare the insurance binders contained false information about the insured customers.

7). On or about May 15, 2008, in the Southern District of Texas and elsewhere, the defendant and other co-defendants knowingly defrauded Energy Capital Credit Union, a member of the National Credit Union Administration (NCUA), of $14,634.80 by making material false employment representations and other false information on E.S. Pickett in a loan application submitted to Energy Capital Credit Union in order to obtain said funds to purchase an automobile from Northwest Pre-Owned, an automobile dealership located in Houston, Texas.

### Forfeiture

13. Defendant agrees to forfeit any and all interest Defendant has or may have in assets related to this case. Defendant agrees and stipulates to waive any and all interests, rights and claims, of any nature or kind whatsoever, that he may have or could ever assert to the property which is listed in the notice of forfeiture in the indictment, and all property which is the subject of any related administrative or judicial forfeiture action, including all property in *United States v. $391,082.95*, Civil Action No. H-09-3533, which has been forfeited.

Defendant waives the right to challenge the forfeiture of property, in any manner, including by direct appeal or in a collateral proceeding.

## Breach of Plea Agreement

14. If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

15. Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

## Complete Agreement

16. This written plea agreement, consisting of ____ pages, including the attached addendum of defendant and his attorney, constitutes the complete plea agreement between the United States, defendant and his counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made

against him and that he is pleading guilty freely and voluntarily because he is guilty.

17. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __May 20, 2011__, 2011.

_____
Defendant

Subscribed and sworn to before me on __May 20, 2011__, 2011.

DAVID BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: __C. Laney__
Deputy United States District Clerk

APPROVED:

JOSE ANGEL MORENO
UNITED STATES ATTORNEY

By: _____    _____
Assistant United States Attorney        Attorney for Defendant
Southern District of Texas

14

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.          § | CRIMINAL NO. H-10-302 (1) |
| § | |
| RICHARD WESLEY LANSDALE, JR. § | |
| Defendant.    § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to defendant the provisions of those Guidelines which may apply in this case. I have also explained to defendant that the Sentencing Guidelines are only advisory and the court may sentence defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with defendant. To my knowledge, defendant's decision to enter into this agreement is an informed and voluntary one.

_____     5-20-2011
Counsel for Defendant                              Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

| _____ | 5-20-11 _____ |
|---|---|
| Defendant | Date |